# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | |
|---|---|
| ABRAHAM A. AUGUSTIN,  ) | |
| ) | Case Nos. 1:09-cr-187, 1:15-cv-237 |
| *Petitioner,*  ) | |
| ) | Judge Travis R. McDonough |
| v.  ) | |
| ) | Magistrate Judge Susan K. Lee |
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| *Respondent.*  ) | |

## MEMORANDUM OPINION

This case is before the Court upon a *pro se* motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255 ("2255 Motion") and supporting memorandum filed by

Abraham A. Augustin ("Petitioner," "Augustin," or "Defendant") on September 15, 2015 [Docs.

141, 142].[1]  As noted in a prior Order [Doc. 175], Petitioner's 2255 Motion asserts ten grounds

---

[1] All citations to the record refer to Petitioner's criminal file.  Petitioner maintains that he has
two causes of action pending: one for the return of property and one for § 2255 relief [Doc. 198].
After filing his 2255 Motion, Petitioner filed several extensive—often repetitive—motions, many
of which appear to relate mostly to various discovery requests made in connection with his
pending motion for the return of seized property, but some of which also seek discovery on his §
2255 proposed amended claims related to alleged prosecutorial misconduct and malicious
prosecution [Docs. 139, 169, 174, 185, 187, 188, 189, 191, 199, 201].  In motions to clarify
[Docs. 199, 201], Petitioner notes that Doc. 174 and Doc. 191 relate to his 2255 Motion, not to
his motion for the return of property.  The Court granted Petitioner's motions to clarify to the
extent that the noted filings would be considered in connection with the 2255 Motion [Doc. 209].
This memorandum opinion does not address the motions related to Petitioner's claims in
connection with the return of property.  *See United States v. Duncan*, 918 F.2d 647, 654 (6th Cir.
1990) (noting that a motion for the return of seized property made after the criminal trial
concludes, as here, is a civil equitable proceeding); *United States v. Range*, 52 F. App'x 727, 729
(6th Cir. 2002) ("Although Criminal Rule 41(e) [now Rule 41(g)] permits pretrial motions for
the return of seized property, when the owner of the seized property invokes the rule after the
close of criminal proceedings against him, courts are to treat his request as a civil action in
equity.") (citations omitted).  *See also* Doc. 175 at Page ID # 1731 n.3.

for relief—all claiming his trial and appellate counsel rendered ineffective assistance. On November 17, 2015, Petitioner filed a motion seeking to amend his 2255 Motion to add a new claim of ineffective assistance of trial counsel for failure to seek dismissal of the indictment based on prosecutorial misconduct during grand jury proceedings [Doc. 155].[2]

On December 7, 2015, the United States of America (the "government") filed a response in opposition to the 2255 Motion contending that Petitioner's first ten claims of ineffective assistance were meritless [Doc. 156]. The government did not address the proposed amendment alleging the new claim as it had not yet been allowed. Thereafter, on January 13, 2016, the Court provisionally granted the motion to add the new claim of ineffective assistance to the extent it might be considered a sub-claim, subject to a latter determination of whether the alleged sub-claim was untimely under § 2255(f) [Doc. 166].

Next, in yet another filing that far exceeds the Court's page limitation for briefs, Petitioner replied to the government's response to his 2255 Motion on February 3, 2016 [Doc. 168]. *See* E.D. Tenn. L.R. 7.1 (b) and (c) (providing that briefs "shall not exceed 25 pages in length"). Then Petitioner filed two motions for discovery in connection with his 2255 Motion [Docs. 174, 191]. Two additional filings related to the 2255 Motion, "Petitioner's Motion for Supplemental Authority Pursuant to 28(J)" [Doc. 167] and his motion for "Leave to Supplement 2255 for Good Cause" [Doc. 170], were previously addressed by the Court [Doc. 175].

---

Petitioner has also file a motion for sanctions [Doc. 186], and a motion to withdraw the motion for sanctions [Doc. 190]. Accordingly, the motion to withdraw the motion for sanctions [Doc. 190] is **GRANTED** and the motion for sanctions [Doc. 186] is **TERMINATED AS MOOT**.

[2] Among his various filings, Petitioner then filed what he characterized as a supplement [Doc. 159] on December 18, 2015 and as an amended supplement [Doc. 160] on December 21, 2015. These supplements claim § 2255 relief based on alleged prosecutorial misconduct in the grand jury proceedings.

On April 18, 2018, the Court ordered the government to file its response to Petitioner's amended filing [Doc. 196]; and, the government did so on May 18, 2018 [Doc. 202]. Thereafter, Petitioner was granted an extension of time to file his reply [Doc. 206]. On July 12, 2018, Petitioner filed his reply to the government's response [Doc. 207].

The 2255 Motion is now ripe. For the following reasons, Petitioner's § 2255 Motion will be **DENIED**.

## I.      BACKGROUND

Petitioner and a co-defendant, Lorrance Dais ("Dais") (collectively "Defendants"), were convicted of kidnapping, using and carrying a firearm during and in relation to a crime of violence, and being a felon in possession of a firearm [Docs. 89 & 90]. Petitioner was also convicted of using the mail with the intent to commit murder for hire, three counts of hiring a person to kill three witnesses with the intent to prevent their attendance and testimony at trial, and attempting to obstruct, influence and impede a trial by attempting to have witnesses killed [Docs. 28, 89]. He was acquitted of a drug conspiracy and related § 924(c) violation [Doc. 89]. In March 2011, Petitioner was sentenced to an aggregate term of 500 months imprisonment: concurrent terms of 380 months for kidnapping, 120 months for firearm possession as a convicted felon and murder for hire, 360 months for attempting to kill witnesses, and 240 months for obstruction of justice, followed by the statutorily mandated consecutive term of 120 months for violating § 924(c) because the firearm was discharged [Docs. 109, 113].

Defendants appealed to the Sixth Circuit Court of Appeals ("Sixth Circuit") arguing that: (1) the government's evidence was insufficient to support the convictions on various counts; (2) the federal kidnapping statute, as amended in 2006, was unconstitutional both on its face and as applied to the facts in this case; (3) this Court erred in declining to sever their trials; (4) this

Court's finding that Augustin discharged a firearm violated his rights under *Alleyne v. United States*, 133 S. Ct. 2151 (2013); (5) the jury instructions and the evidence at trial constructively amended or varied from the superseding indictment; and (6) their sentences are substantively unreasonable. *United States v. Dais*, 559 F. App'x 438, 440 (6th Cir. 2014). The Sixth Circuit affirmed this Court in all respects. *Id.* at 450. The Supreme Court denied Petitioner's petition for a writ of certiorari on October 6, 2014, rendering Petitioner's conviction final [Doc. 133].

As summarized by the Sixth Circuit, this case

> arises from events that occurred after a failed drug deal. In December 2009, Abraham Augustin agreed to pay $5,100 to a man known only as 'Hoss' in exchange for six ounces of powder cocaine. Neither Augustin nor Hoss, however, honored the bargain. Augustin paid only $4,200, and the cocaine turned out to be fake. In an attempt to recoup the $4,200, Augustin and codefendant Lorrance Dais abducted Robert Jordan, the middle man in the drug transaction, and Jordan's friend Curtis Smith, and held the former for ransom. Augustin and Dais were later arrested for the kidnapping.
>
> ***
>
> **A. Factual background**
>
> The crucial events in this case occurred in a Chattanooga nightclub, at a nearby gas station, and in a rural area outside of Cleveland, Tennessee. Following their meeting at a nightclub called "Club Drinks," Augustin called Jordan and said that he wanted to purchase six ounces of powder cocaine. Jordan, who is not a drug dealer, contacted a man named Hoss, who agreed to sell six ounces of cocaine to Augustin for $5,100.
>
> The drug exchange took place at a gas station in Chattanooga. Augustin gave the cash to Jordan, who delivered the payment to Hoss, who then handed over the cocaine that Jordan delivered to Augustin. Smith was present at the gas station, but stayed in Jordan's vehicle during the transaction.
>
> Augustin and Hoss were both dissatisfied with the transaction. Hoss contacted Jordan and said that he had been shorted $900. Jordan,

hearing this information, called Augustin, who eventually agreed to meet the following morning for the purpose of "pay[ing] up."

When Jordan and Smith arrived at the meeting place the next day, Augustin told them to get into his BMW. Dais was already sitting in the driver's seat. Augustin and Dais then drew firearms, told Jordan and Smith that they were being kidnapped, confiscated their cellular telephones, and informed them that the cocaine from the earlier drug transaction was fake. The kidnappers handed back Smith's cellular telephone and instructed him to call a particular number to deliver their demands: they sought either the return of the $4,200 that Augustin had already paid, the delivery of real cocaine, or access to Hoss. Augustin then released Smith, but not before stating that he would kill both Smith and Jordan if the police were contacted.

Dais proceeded to a rural area near Cleveland, Tennessee, with Jordan blindfolded and bound in the back seat. Dais parked the car near a field and removed Jordan's blindfold. Augustin and Dais then returned Jordan's cellular telephone and instructed him "to call to get the demands." What Augustin was demanding was a ransom of $4,200 in order to recoup the amount that he had given Jordan for what turned out to be fake cocaine.

Jordan used his cellular telephone to call Deidre Watkins, his mother, who initially hung up because she thought her son was joking about being kidnapped. After this, Augustin aimed his gun at Jordan's head and told him to "tell her what happened." Jordan complied, and Watkins agreed to bring the ransom money to a nearby gas station.

While waiting for Watkins to call with information about the money, Augustin again threatened Jordan, claiming that he could kill and bury him at their current location. Augustin placed one bullet into the chamber of his revolver, spun the cylinder, aimed the weapon at Jordan's head, and pulled the trigger. The revolver did not fire. Augustin then fired one shot at a passing bird, presumably to prove that the revolver worked.

The kidnappers were eventually arrested after a bank teller told the police about Watkins withdrawing $4,200 from her personal account to satisfy a ransom demand. Augustin and Dais were then booked on state charges and released on bond. After being released, Augustin called Jordan to say "[i]f you don't show up in court and testify, you know, it's okay." Jordan subsequently contacted Special Agent Wayne Jackson of the Federal Bureau of Investigation, who

obtained and executed federal arrest warrants for Augustin and Dais.

A short time later, another law-enforcement officer reported that Augustin had made a call from a jail telephone to arrange to "have something done" to the witnesses in this case. This same law-enforcement officer also reported that Augustin intended to mail a letter in which "he was asking for somebody to help do away with the witnesses." Special Agent Jackson retrieved this mailing, containing two letters, one of which provided instructions about how to hire a hit man to kill Jordan, Smith, and Watkins.

## B. Procedural background

Before trial, Augustin and Dais moved to dismiss the kidnapping-related counts in the Superseding Indictment. Dais then moved to sever his trial. The district court denied both motions.

After their convictions, Augustin and Dais moved for a judgment of acquittal, which the district court denied. The court then sentenced Augustin to an aggregate term of 500 months of imprisonment, including a statutorily mandated term of 120 months' imprisonment because a firearm had been discharged during the kidnapping. *See* 18 U.S.C. § 924(c). Dais was sentenced to an aggregate term of 390 months of imprisonment, which included the same statutorily mandated term of 120 months' imprisonment under 18 U.S.C. § 924(c).

*Dais*, 559 F. App'x at 440-42 (alterations in original).

## II.     ASSERTED GROUNDS FOR RELIEF

Petitioner's original 2255 Motion asserts ten grounds for relief—all claiming trial and appellate[3] counsel rendered ineffective assistance. More specifically, Petitioner claims that

---

[3] Petitioner's claims about his appellate attorneys' performance are almost impossible to attribute to any particular attorney. As noted by the government, [Doc. 156 at Page ID # 1474 (citing Docket Sheet for Appeal No. 11-5357)], Petitioner specifically mentions by name only his retained trial counsel, Lloyd Levitt, as appellate counsel. While Attorney Levitt was initially Petitioner's appellate counsel, Petitioner sought to have Attorney Levitt withdraw as counsel before briefing. Attorney Paul Nelson was then appointed to represent Petitioner, but withdrew after filing his brief. Petitioner then retained Attorneys Robert Sirianni, Jr. and Mark McCulloch who successfully sought to have Attorney Nelson's brief withdrawn and replaced with their filings.

counsel provided ineffective assistance either at trial or on appeal by: (1) failing to raise arguments in previous motions for a new trial and judgment of acquittal; (2) failing to argue that a constructive amendment occurred; (3) failing to file a suppression motion; (4) failing to challenge the validity of a search warrant at a *Franks* hearing; (5) failing to petition for a rehearing; (6) advising Petitioner with respect to counts in the indictment to which he would have pleaded guilty, but for counsel's frivolous advice; (7) failing to challenge a jury instruction involving the use of cellular phones as an instrumentality of interstate commerce; (8) failing to challenge testimony of a witness; (9) failing to properly impeach a witness; and (10) failing to challenge the initial criminal complaint on the basis of the purported falsehoods contained in the supporting affidavit.  Petitioner later filed a motion to amend his 2255 Motion to add a claim of ineffective assistance of trial counsel for failing to seek dismissal of the charges due to alleged prosecutorial misconduct before the grand jury and "supplements" related to same [Doc. 155, 159, 160].

## III.    STANDARD of REVIEW

### A.    Threshold Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence, if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid.  *Mallett v. United States*, 334 F.3d 491, 496-97

(6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude that had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353-54 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief[.]" *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8(a) requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. Defendant's burden of establishing that he is entitled to an evidentiary hearing is relatively light. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin*, 889 F.3d at 832 (quoting *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir.

2017)) (internal quotation marks omitted). Where the defendant presents an affidavit containing a factual narrative that is neither inherently incredible nor contradicted by the record and the government offers nothing more than contrary representations in response, the defendant is entitled to an evidentiary hearing. *Id.* (quoting *Huff*, 734 F.3d at 607).

## B.    Standard for Ineffective Assistance of Counsel

As noted, Petitioner raises multiple ineffective-assistance-of-counsel issues. Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (citation omitted). That test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id*. (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because:

A fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective-assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

IV.    **TIMELINESS**

A one-year period of limitation applies to § 2255 motions and typically runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Petitioner's judgment became final in October 2014 and his 2255 motion is timely filed. Petitioner did not file his first motion to amend until November 2015 [Doc. 155], however, and it is not timely

filed.[4]

An attempt to raise new claims for relief in a Rule 15(c) motion to amend is subject to the one-year statute of limitations set forth in § 2255(f), *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008), and "'a party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired.'" *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016) (quoting *United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000)). "Consequently, a Rule 15 motion will be denied where it is filed after that period expires unless the proposed amendment relates back to the date of the original pleading within the meaning of Rule 15(c)(2)." *Howard*, 533 F.3d at 475-76 (citations omitted). As already noted for purposes of Rule 15, the "original pleading" in a habeas proceeding is the § 2255 motion as initially filed. *Mayle v. Felix*, 545 U.S. 644, 655 (2005).

Petitioner's motion to amend seeks to add a new eleventh claim to these proceedings. His supplements appear to attempt to add a twelfth claim. As the motion to amend and supplements were filed beyond the expiration of the one-year limitation period set forth in § 2255(f)(1), they are untimely under § 2255(f)(1), and there is no basis to support a later triggering date under § 2255(f)(2), (3) or (4). Thus, the new claims Petitioner wishes to raise may be considered only if they relate back to the claims raised in his timely 2255 Motion as initially filed under Rule 15(c). The Court concludes they do not relate back; and even if they do, they fail on the merits.

Relation back under Rule 15(c) is in order when the petition as initially filed and the proposed amendment to that petition states claims that are "tied to a common core of operative

---

[4] It was signed on November 12, 2015, and filed on November 17, 2015.

facts." *Mayle*, 545 U.S. at 664. However, a claim that "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth" will not relate back. *Howard*, 533 F.3d at 476 (quoting *Mayle*, 545 U.S. at 650)); *see also United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) ("Rule 15(c) does not apply where the prisoner's proposed amendment makes claims or is based on occurrences 'totally separate and distinct, 'in both time and type' from those raised in his original motion.'") (citation omitted).

Here, the 2255 Motion as initially filed raised several claims that counsel was ineffective—the 2255 Motion and supporting memorandum faulted counsel for not disputing the adequacy of the affidavit supporting the criminal complaint, not moving to suppress evidence, not ensuring Petitioner pleaded guilty to certain firearms counts, and not performing differently during trial and on appeal. Petitioner's motion to amend mainly asserts that trial counsel was ineffective for not moving to dismiss the indictment based on purported prosecutorial misconduct during the grand jury proceedings. The substance of Petitioner's eleventh claim appears to address the prosecutor's conduct in relation to the testimony of Special Agent Jackson ("Agent Jackson") before the grand jury. This eleventh claim is both factually and temporally distinct from the ten timely-filed claims, as the ten original claims do not relate to the prosecution misconduct in grand jury proceedings and there is no "common core of operative facts" linking the eleventh claim to Petitioner's original ten claims.

The mere fact that Petitioner raised a challenge in his original motion based on ineffective assistance does not provide a basis for him to untimely assert entirely different challenges to his attorney's performance based on different facts. *Collier v. United States*, No. 1:06-CR-57, 2011 WL 703932, at *6 (E.D. Tenn. Feb. 17, 2011) (citing *Hicks*, 283 F.3d at 388). The Supreme Court in *Mayle* expressly rejected an interpretation of the same "conduct,

transaction, or occurrence" to mean the same "trial, conviction, or sentence." *Mayle*, 545 U.S. at 664. "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id.* at 662.

Moreover, even if the Court considers the merits of Petitioner's arguments, they fail. As addressed in more detail later in this memorandum opinion, Petitioner's trial counsel effectively cross-examined Agent Jackson concerning his grand jury testimony. *See infra* Part V.A.5. Additionally, much of Petitioner's eleventh claim relates to Agent Jackson's grand jury testimony about Petitioner's usage of a cell phone and the prosecution's use of that fact to establish a federal nexus for prosecution [Doc. 159 at Page ID # 1522-27]. Again in his reply, Petitioner reiterates his concerns regarding his conviction premised, in part, on his use of a cell phone [Doc. 207 at Page ID # 1913-20]. Petitioner's dogmatic contention that Jordan stated that Petitioner did not use a cell phone is belied by Jordan's own testimony [Doc. 122 at Page ID # 858-59]. Accordingly, Petitioner's eleventh claim is meritless.

Petitioner's twelfth claim is even more distinct. In the proposed amendment, Petitioner belabors his federal-nexus argument, repeatedly claiming that he did not use a cell phone in the commission of his offenses. He asserts a malicious prosecution claim—claiming there was no probable cause to justify Petitioner's arrest and indictment—and realleges other nefarious conduct by Agent Jackson and the prosecution [Doc. 159 At Page ID # 1532-35]. This purported twelfth claim does not relate back to Petitioner's original 2255 Motion; at best, it relates to his untimely eleventh claim.

The twelfth claim also fails on the merits. As previously explained by this Court in its memorandum concerning Defendants' post-trial motions for judgment of acquittal and/or new

trial [Doc. 104 at Page ID # 564], Petitioner relies on too limited a definition of "use" in connection with his cell phone arguments.[5] Petitioner was not denied effective assistance of counsel on this issue, which was addressed by his counsel both in this Court [*see also*, Doc. 104] and on appeal. *See Dais*, 559 F. App'x at 441-45 (discussing the sufficiency of Petitioner's conviction regarding the "use" of a cellular telephone in the commission of his crimes). Consequently, Petitioner's twelfth ground is not only untimely, but also meritless.

Petitioner's motion to amend his 2255 Motion seeks to add claims that are untimely under § 2255(f) and do not relate back to the date of his initial 2255 Motion. Petitioner has not asserted, and the Court cannot discern, any grounds for equitable tolling.[6] Moreover, even if considered timely, the eleventh and twelfth grounds set forth in the motion to amend and supplements [Docs. 155, 159, 160] are meritless for the reasons addressed herein and will be **DISMISSED**.

---

[5] Moreover, Petitioner seemingly (although perhaps inadvertently) acknowledges "use" of the cell phone in his reply when Petitioner states that he retained Jordan's cell phone and it "was given back to [Jordan] once Jordan himself introduced the idea and asked for his phone back to call his mother." [Doc. 207 at Page ID # 1917-18]. The logical inference of this statement is that Petitioner dictated when the cell phone could be used and how it would be used. S*ee* Doc. 104 at Page ID # 563-567 (discussing the sufficiency of the evidence regarding the use of a cell phone in Petitioner's crimes). *See also United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990) (defining "use" within a criminal statute as meaning "constructive[] possession" of the particular object).

[6] The one-year limitation period set forth in § 2255(f) is not jurisdictional, *Day v. McDonough*, 547 U.S. 198, 205 (2006), and may be subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645 (2010). This is not an appropriate case. A habeas petitioner is entitled to equitable tolling only if he shows that: (1) he has been pursuing his rights diligently, and (2) that "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649. Here, Petitioner has not demonstrated that he pursued his rights diligently or that some extraordinary circumstance prevented him from timely raising the claims set forth in his motion to amend and supplements.

**V.     ANALYSIS OF REMAINING CLAIMS**

As the government did, the Court will organize and address the ten ineffective-assistance-of-counsel issues raised by Petitioner in the 2255 Motion by case stage.

**A.  Pretrial and Trial**

Petitioner alleges that trial counsel was constitutionally ineffective for not challenging the criminal complaint, for not filing another motion to suppress evidence or seeking a *Franks* hearing, for not ensuring Petitioner pleaded guilty to certain firearms counts, and for deficient performance at trial.

**1.   Criminal Complaint (Petitioner's Ground 10)**

Petitioner contends that counsel was ineffective under *Strickland* in failing to contest the validity of Agent Jackson's affidavit supporting the original criminal complaint in this case. Petitioner seems to assert the kidnapping charge lacked sufficient probable cause [Doc. 142 at Page ID # 1391-97].  In a reply, Petitioner mainly contends the allegedly false statements in Agent Jackson's affidavit about the use of a cell phone were a ruse to invoke federal jurisdiction over what should have remained a state charge [Doc. 168 at Page ID # 1649-51].  Indeed, much of Petitioner's § 2225 Motion (and his earlier arguments at trial and on appeal) focus on various, distinct theories build upon his cell phone nexus arguments.

Petitioner was convicted pursuant to a superseding indictment—not the criminal complaint.  Thus, the complained-of affidavit supporting the criminal complaint by Agent Jackson is of no consequence.  Counsel cannot be deficient for failing to challenge a criminal complaint supplanted by an indictment and then a superseding indictment.  Petitioner provided no authority to support his position in this regard, and the Court is aware of no such authority.

Petitioner repeatedly claims that, because he did not use, or cause to be used, a cellular

phone in connection with the kidnapping, federal jurisdiction was invoked on a false premise. Petitioner's trial counsel *did* challenge the constitutionality of the Federal Kidnapping Act ("Act") (and the federal jurisdiction of the related § 924(c) count), both facially and as applied to Petitioner's specific case [Docs. 34, 35]. The Act criminalizes kidnapping where the offender "uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1). This Court rejected Petitioner's arguments [Doc. 62], finding the Act to be "constitutional on its face under Congress's plenary power to regulate instrumentalities of interstate commerce . . . . The jurisdictional element is therefore satisfied by limiting federal kidnappings to those that involve either the victim's or the offender's travel across state lines or the use of instrumentalities of interstate commerce in the commission of or in furtherance of the offense." [Doc. 61 at Page ID # 347]. The Court "reserve[d] for the jury the determination of whether the use of instrumentalities satisfies the [Act]." [*Id.* at Page ID # 348]. On appeal, the Sixth Circuit again rejected the Petitioner's challenge to federal jurisdiction, emphasizing that the defendants "employed a cellular telephone in furtherance of the commission of the offense by forcing Jordan to call his mother in an attempt to obtain a ransom." *Dais*, 559 F. App'x at 442-43 (internal quotation marks omitted).

Petitioner's argument that the affidavit falsely relies on the use of cell phones in the kidnapping to invoke federal jurisdiction is unsupported and frivolous. This is but another rendition of the argument rejected by this Court and the Sixth Circuit. As held by the Sixth Circuit:

> Although Augustin and Dais did not "use" a cellular telephone in the traditional sense of personally placing calls, the government offered evidence that they employed a cellular telephone "in

16

furtherance of the commission of the offense" by forcing Jordan to call his mother in an attempt to obtain a ransom. Augustin and Dais thus converted a cellular telephone to their purpose of obtaining payment for Jordan's release and "derived service" from a cellular telephone because it was instrumental in obtaining the ransom.

Our conclusion is bolstered by the Supreme Court's common-sense statement that there are multiple ways to "use" an object. Because the government offered evidence that Augustin and Dais used a cellular telephone in the commission of the kidnapping, we reject their arguments on this issue.

*Dais*, 559 F. App'x at 442-43 (citations omited).

As a result, Petitioner cannot establish that counsel's performance was deficient or that he was prejudiced for failing to seek dismissal of the criminal complaint. *See, e.g.*, *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel [i]s not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel.").

### 2. Motion to Suppress (Petitioner's Grounds 3 & 4)

Petitioner asserts his third and fourth ground "are inextricably intertwined" [Doc. 168 at Page ID # 1614, 1622], and his counsel should have moved to suppress all evidence seized from Petitioner's hotel room on the day of the crime [Doc. 142 at Page ID # 1342-52]. Counsel did file an unrelated motion that sought suppression of information gained from later conversations between Petitioner and a jailhouse informant, which was decided in favor of the government because Petitioner did not establish the informant was acting as a government agent [Docs. 39, 69].

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The "ultimate touchstone" in this area of law is "reasonableness." *Riley v. California*, 134 S. Ct.

2473, 2482 (2014) (citation omitted). When the underlying issue relating to ineffective assistance is a Fourth Amendment challenge, as here, a petitioner must show that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Petitioner contends that the initial entry into his hotel room and subsequent search was unlawful because: (1) law enforcement should have asked Petitioner's girlfriend for consent to search the hotel room, as she rented it, (2) law enforcement should have known Jordan, the kidnapped victim, would not have been in the room because Smith's cell phone, which was left with Petitioner, was being tracked by law enforcement and was actually with Jordan several miles away, and (3) no evidence in the hotel room was in "plain view" and he was never observed leaving the hotel room, just the hotel office [Docs. 142 At Page ID # 1342-46; 168 at Page ID # 1599-612]. Contrary to Petitioner's claims, the record shows that the officers' initial entry into the hotel room was justified by exigent circumstances, and the evidence later *seized* from that room (and from Petitioner's car) was obtained pursuant to a valid search warrant. Petitioner has not identified any non-frivolous basis for seeking suppression of this evidence, so counsel cannot be deemed ineffective for failing to pursue that claim. Nothing in the record suggests that the actions of the law enforcement officers were so inconsistent with the Fourth Amendment that suppression would be required. "[F]ailure to bring a meritless suppression motion cannot constitute ineffective assistance." *Brown v. McKee*, 231 F. App'x 469, 475 (6th Cir. 2007) (quoting *United States v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999)).

Accordingly, Petitioner's counsel, who chose to focus on a potentially more meritorious motion to suppress, did not provide ineffective assistance by failing to challenge the search either

separately or during the evidentiary hearing on the unrelated motion to suppress. *See Kimmelman*, 477 U.S. at 375; *Coleman v. Mitchell*, 268 F.3d 417, 430-31 (6th Cir. 2001) (holding that counsel is not ineffective for refusing to litigate every conceivable issue). Even if Petitioner could show that his counsel should have filed such a motion, he has not shown the motion would have been successful and thus he is entitled to no § 2255 relief. *See Howard v. Bouchard*, 405 F.3d 459, 480-85 (6th Cir. 2005).

### 3. Not Pleading Guilty to Firearms Charges (Petitioner's Ground 6)

Petitioner complains that his counsel allowed him to proceed to trial without first pleading guilty to Counts 5 and 6 of the superseding indictment—two § 922(g)(1) counts [Doc. 142 at Page ID # 1358]. Such "claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012).

Petitioner claims he told counsel he wanted to "plead out to Counts 5 and 6 of the indictment because he was guilty of having the guns[,]" but counsel "told him that it would not be necessary because he (counsel) would get the guns found in the hotel room suppressed, and that the murder-for-hire and kidnapping charges would fail that relied on the other guns." [Doc. 142 at Page ID # 1358]. Petitioner contends he would have received a "substantially lower sentence on the two counts" and "a favorable plea agreement" had the government been aware of "his willingness to plead out to these two counts." [Doc. 142 at Page ID # 1358-59]. The government argues the Petitioner's claims in this regard are inherently incredible, and he cannot show prejudice [Doc. 156 at Page ID # 1478]. Although Petitioner filed a sixty-three page reply and additional supplements, he chose not to address the government's response to this purported ground for § 2255 relief.

Preliminarily, and even though not addressed by the parties, Petitioner undoubtedly is not named in Count 6 and could not have pleaded guilty to it. Count 5 charges Petitioner with being a felon in possession of firearms and Count 6 changes Dais with the same offense [Doc. 28 at Page ID # 57-58]. To the extent Petitioner seeks § 2255 relief as to Count 5, however, there is a recognized duty for defense counsel to explore a plea deal in some situations. *Compare Newman v. Vasbinder*, 259 F. App'x 851, 854 (6th Cir. 2008) (citation omitted) (finding that, although "[a]dequate representation by a criminal defense attorney entails exploring possible plea negotiations and deals," counsel's assistance was not ineffective where counsel "did not seek a plea agreement that she reasonably believed the prosecutor would reject, and that could not be reconciled with her client's version of the facts of the offense"), *with Martin v. Rose*, 717 F.2d 295, 296 (6th Cir. 1983) (stating that ineffective assistance premised principally on total failure of counsel to mount a defense as opposed to the failure to pursue plea negotiations).

"It is an especially difficult question to define the duty and responsibilities of defense counsel in the plea bargain process. Bargaining is, by its nature, defined to a substantial degree by personal style, and the alternative courses and tactics of negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Maslonka v. Hoffner*, __ F.3d __, 2018 WL 3849370, at *7 (6th Cir. Aug. 14, 2018) (quoting *Frye*, 566 U.S. at 144) (quotation marks omitted) (citation omitted) (alternation omitted)). In this case, like in *Maslonka*, even if counsel's performance was deficient under Petitioner's version of events (*i.e.*, that counsel allowed Petitioner to go to trial on the two counts to which Petitioner wanted to plead guilty and that counsel did so by falsely claiming he would get the gun evidence suppressed), counsel's failure to attempt to secure a plea agreement as to only Count 5 has not

been shown to prejudice Petitioner.

Petitioner has not credibly shown that the government would have offered a plea deal on a single gun count given the remaining and significantly more serious charges unaddressed even under Petitioner's version of events. *See Newland v. United States*, 443 F. App'x. 934, 935 (6th Cir. 2011) (stating that a defendant must prove he would have taken a plea deal offered by the government but for counsel's deficient performance); *see also, e.g.*, *Delatorre v. United States*, 847 F.3d 837, 846 (7th Cir. 2017) (emphasis in original) ("Because Delatorre's prejudice argument centers on his *attorney's* inability to secure a plea agreement for him, Delatorre had to show—at a minimum—that the prosecutor would have actually offered him a deal had his attorney been competent." (emphasis in original)); *Getter v. Smith*, No. 12-11705, 2014 WL 320020, at *10 (E.D. Mich. Jan. 29, 2014) ("Because there is no evidence that the prosecutor would have offered such a deal to petitioner, he cannot show that counsel was ineffective for failing to secure such a deal"); *United States v. Cunningham*, Nos. 3-97-CR-263-R, 3-01-CR-1160-R, 2002 WL 1896932, at *4 (N.D. Tex. Aug. 14, 2002) (holding that defendant "provide[d] nothing to affirmatively show that the government would have entered into any plea agreement" or "that she would have entered into such a plea"); *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000) (holding "the successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client, clearly absent here, as well as the cooperation of the prosecutor, who has no obligation to offer such an agreement"); *Gaines v. United States*, No. 2:10-CV-221, 2:09-CR-52(1), 2014 WL 1267261, at *7 (E.D. Tenn. Mar. 26, 2014) (citation omitted) (finding no ineffective assistance of counsel because "no constitutional right was compromised" due to counsel's "fail[ure] to secure a plea deal"); s*ee also Weatherford v. Bursey*, 429 U.S. 545, 560-61 (1977) (holding "there is no constitutional right to plea bargain"

and a prosecutor is under no legal obligation to consider or negotiate a plea with a defendant; the decision to offer a plea bargain is a matter of prosecutorial discretion).

More significantly, Petitioner's 120-month sentence on the § 922(g) conviction was concurrent with most of the other sentences he received on the other counts he was convicted of, was shorter than his other sentences, and did not have any appreciable effect on Petitioner's total aggregate sentence of 500 months. So, even viewing this argument in the light most favorable to Petitioner, he does not state facts that suggest his sentence would have been shorter or any other prejudice but for his attorney's alleged performance with regard to plea negotiations on his § 922(g)(1) count. Because Petitioner has not demonstrated that any constitutionally deficient performance by his counsel prejudiced him, he has not satisfied *Strickland's* test. The Supreme Court has emphasized a claimant must establish both prongs of a claim for ineffective assistance of counsel in order to meet his burden, and if either prong is not satisfied the claim must be rejected. *Strickland*, 466 U.S. at 69.

### 4. Jury Instructions (Petitioner's Ground 7)

Petitioner claims counsel insufficiently objected to a jury instruction involving a cell phone as an instrumentality in interstate commerce. Petitioner concedes that counsel did object to the instruction "citing that a cellular telephone being an instrumentality of interstate commerce is not set law in any of the districts." [Doc. 142 at Page ID # 1362]. However, Petitioner argues this objection by his counsel was vague and that a better objection focused on what Congress intended to regulate should have been made [*id.*]. Regardless of the articulation of the objection, Petitioner can show no prejudice.

Petitioner has raised his cell phone issue many times, in many ways. As noted, Defendants were convicted of violating the Act in spite of various cell phone objections during

trial. Defendants also filed post-trial motions to challenge the sufficiency of the evidence proving their "use" of a cellular telephone in furtherance, or in the commission of, the offense [Docs. 96 at Page ID # 498-500; 97 at Page ID # 524-526]. They also objected post-trial to the Court's instruction that a cellular phone is an instrumentality of interstate commerce [*id.*]. Petitioner continues to focus on the lack of evidence that either Defendant made telephone calls on his *own* cellular telephone in the commission of, or in furtherance of the commission of, the offense [*id.*]. Unfortunately, Petitioner continues to discount the evidence of telephone calls with instructions for delivering ransom money, drugs, or the drug supplier himself. As the Court ruled in both the trial and in the post-trial context, Petitioner's attempt to limit the definition of "use" to include only calls made by him on his personal telephone falls short [Doc. 104 at Page ID # 563-67].

Addressing the issues raised on appeal, the Sixth Circuit upheld, among other things, that the Act did not violate the Commerce Clause, U.S. Const. Art. I, § 8, cl. 3, as applied to Petitioner and Dais, who were both convicted under the Act due to the use of a cellular telephone to commit a kidnapping. *Dais*, 559 F. App'x at 445. The Sixth Circuit found that Congress had authority to regulate interstate commerce and that the actions of Petitioner and Dais in forcing the kidnapping victim to use his own cellular telephone to call his mother to obtain a ransom constituted the "use" of an instrumentality of interstate commerce within the meaning of the Act and that they converted the cellular telephone to their purpose of obtaining payment for the victim's release and "derived service" from a cellular telephone because it was instrumental in obtaining the ransom. *Id.* at 443. As a result, Petitioner cannot show prejudice, because, even if counsel had articulated his jury instruction challenge more eloquently, the challenge would have been unsuccessful.

### 5. Agent Jackson's Testimony (Petitioner's Grounds 8 & 9)

Petitioner contends counsel insufficiently objected to Agent Jackson's testimony about the credibility of Jordan and Smith, insufficiently objected to Agent Jackson's testimony about Jordan's grand jury testimony, and failed to properly impeach Agent Jackson [Doc. 142 at Page ID # 1372-90]. However, the specifically complained-of testimony about the credibility of Jordan and Smith was elicited by counsel for Dais and was not presented for the truth of the matter asserted. The initial objection to Agent Jackson's testimony about Jordan's grand jury testimony was made by the government's attorney after counsel for Dais asked Agent Jackson about Jordan's testimony, specifically in an attempt to elicit testimony about Jordan's credibility [Doc. 122 at Page ID # 811-13]. When Petitioner's counsel later objected to testimony elicited by the government from Agent Jackson about various statements made by Jordan and Smith, the objection was overruled on the basis that they were not being offered for purposes of showing the contents were true, but to show they were consistent [Doc. 122 at Page ID # 840-42]. Moreover, Jordan testified at trial and was vigorously cross-examined by Petitioner's counsel about his testimony at trial and before the grand jury [Doc. 122 at Page ID # 887-919].

Petitioner also contends that trial counsel failed to "properly" impeach Agent Jackson's testimony because he allowed Agent Jackson "to explain his inconsistencies." [Doc. 142 at Page ID # 1384]. Such decisions about whether and to what extent to conduct cross-examination are strategic and "effectively insulated" from ineffectiveness review. *Hurley v. United States*, 10 F. App'x 257, 260 (6th Cir. 2001). Petitioner has not shown that trial counsel's performance was deficient or that he was prejudiced in this regard. *See Bevil v. United States*, Nos. 2:06-CR-52, 2:07-cv-224, 2010 WL 3239276, at *3 (Aug. 16, 2010) (citation omitted) (recognizing that the "burden of proving ineffective assistance of counsel is on the petitioner").

**B. Direct Appeal**

Petitioner argues appellate counsel failed to present certain issues on appeal, failed to challenge the Court's denial of Petitioner's post-trial motion for new trial, failed to allege a constructive amendment of the superseding indictment, and failed to request rehearing of his appeal *en banc* [Doc. 142 at Page ID # 1332-41, 1353-57].

**1. Issues on Appeal (Petitioner's Ground 1)**

Petitioner argues appellate counsel was ineffective for not arguing on appeal that the evidence was insufficient to support his witness-tampering convictions, because "his actions . . . did not amount to an overt act." [Doc. 142 at Page ID # 1332]. As argued by the government, however, Petitioner overlooks that his counsel challenged the sufficiency of the evidence on the murder-for-hire counts. In reply, Petitioner states he was not addressing the murder-for-hire count; instead, he contends he took no substantial step toward witness tampering as alleged in Counts 8, 9 and 10 of the superseding indictment [Doc. 168 at Page ID # 1591-96].

As argued by the government, Petitioner's initial complaints about appellate counsel arise from Petitioner's disagreement with the issues raised on direct appeal. The decision of which issues to raise and how to raise those issues on appeal primarily rests with counsel. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks omitted) ("Th[e] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."); *Coleman*, 268 F.3d at 430-31. The evidence is clear that appellate counsel explained to Petitioner it was counsel's duty to determine the issues raised on appeal [Doc. 156-2 at Page ID # 1492]. While it is possible to bring a *Strickland* ineffectiveness claim based on appellate counsel's failure to raise a particular claim, "it is

25

difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). "In such cases, the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Robbins*, 528 U.S. at 289). Petitioner has not come close to making that showing here.

Petitioner's distinction in reply makes no difference in practice. In Counts 8, 9, and 10, Petitioner was charged with attempting to kill Smith, Jordan, and Watkins with the intent to prevent their attendance and testimony at an official proceeding in violation of 18 U.S.C. § 1512(a)(1)(A). In Count 11, Petitioner was charged with attempting to obstruct, influence, and impede an official proceeding by having witnesses killed in violation of 18 U.S.C. § 1512(c)(2). Petitioner's counsel extensively argued the government failed to prove an overt act that could be considered a "substantial step" with regard to any of these alleged crimes contending that Petitioner's conduct did not go beyond mere preparation. As addressed during the trial and again post-trial, the Court resoundingly rejected this argument finding that the proof at trial was sufficient to establish Petitioner engaged in conduct that went well beyond mere preparation [Doc. 104 at Page ID # 570].

By arguing on appeal that there was no proof of an agreement on the murder-for-hire counts, counsel effectively challenged, by extension, the sufficiency of evidence on the witness tampering and obstruction counts as they were based on the same evidence. *See Dais*, 559 F. App'x at 443-44 (discussing Defendant's challenge to his murder-for-hire conviction). Not only did this Court reject the argument, but the Sixth Circuit also rejected it finding that "in light of [Petitioner's] convictions on these Counts being connected to the evidence related to his murder-for-hire conviction, we conclude that sufficient evidence supports his convictions on Counts 8

26

through 11." *Id*. at 444. Given this finding, Petitioner has not, and cannot, successfully show that a challenge to the sufficiency of the evidence on his witness tampering convictions would have been more likely to succeed than the claims counsel strategically chose to raise on appeal. *See Caver*, 349 F.3d at 348.

### 2. Constructive Amendment (Petitioner's Ground 2)

Petitioner also argues appellate counsel should have raised the argument that the kidnapping count was, purportedly, constructively amended when the Court included the phrase "used or caused to be used" when discussing the use of the cell phone in committing the offense [Doc. 142 at Page ID # 1338-41]. The government responded noting that Dais did raise this issue on appeal. In reply, Petitioner claims his issue is not the same issue raised on appeal by Dais, because constructive amendment occurred when, instead of being convicted of his own *use* of a cell phone, he was convicted of "causing someone else to use a cell phone" [Doc. 168 at Page ID # 1597].

A constructive amendment occurs only when "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of an offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998) (internal quotation marks omitted) (quoting *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986)). "To obtain habeas relief in a challenge to a jury instruction, Petitioner must show that the instruction by itself so infected the entire trial that the resulting conviction violates due process. *Martin v. United States*, Nos. 3:07-CR-51-TAV-HBG, 3:14-cv-482-TAV, 2018 WL 1404268, at *2 (E.D. Tenn. Mar. 20, 2018) (internal quotation marks omitted) (quoting *Berry v. Capello*, 576 F. App'x 579 (6th Cir. 2014)) (quoting *Estelle v.*

*McGuire*, 502 U.S. 62, 72 (1991))).  Petitioner's claims in this regard are easily disposed of given that Dais did raise the pertinent issue on appeal, and the Sixth Circuit rejected it.  *Dais*, 559 F. App'x at 448.  As a result, Petitioner cannot establish that counsel's performance was deficient or that he was prejudiced.  *See, e.g., Ludwig*, 162 F.3d at 459 ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel.")

### 3. *En Banc* Rehearing (Petitioner's Ground 5)

Petitioner also argues counsel fell short of the *Strickland* standard by not seeking an *en banc* rehearing before the entire Sixth Circuit [Doc. 142 at Page ID # 1353-57].  The government responded by arguing *Strickland* cannot apply to a discretionary appeal, and noted that a petition for a writ of certiorari was filed by counsel.  In reply, Petitioner makes much of the fact that he filed the petition for a writ of certiorari *pro se*, not counsel [Doc. 168 at Page ID # 1623-24].

Again, this is a distinction without a difference.  This argument fails because Petitioner has no constitutional right to counsel for such a discretionary appeal.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  "[W]here there is no constitutional right to counsel there can be no deprivation of effective assistance[.]" *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009) (*en banc*) (internal quotation marks omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)).  "[S]o[,] the failure to file for such review cannot amount to constitutionally ineffective assistance." *Id.* (citing *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982)).  "[T]he Constitution does not entitle a defendant to the assistance of counsel for a discretionary appeal," such as a petition for rehearing or certiorari. *Id.* at 248-50 (citations omitted); *accord Tolliver v. Sheets*, 594 F.3d 900, 929 (6th Cir. 2010).

## C. Remaining Issues

Given the extensive filings of Petitioner, which egregiously exceed the page limits for such filings, all remaining claims mentioned in passing by Petitioner are properly dismissed as violating the local rules and being inadequately developed. *See Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (explaining that where "claims are stated in the form of conclusions without any allegations of facts in support thereof," a § 2255 motion is "legally insufficient to sustain review"); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (citation omitted) ("Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing," much less relief). Moreover, all new claims Petitioner attempts to raise in his last reply, such as claims of Brady violations and allegations of theft against Agent Jackson [Doc. 208], are improperly raised. "'Raising [an] issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). [*See also* Doc. 196 (instructing Petitioner not to attempt to raise new issues in reply)].

The Court will, however, briefly address Petitioner's supplement concerning *Rosemond v. United States*, 572 U.S. 65 (2014), which was decided on March 5, 2014, a few days prior to the issuance of the Sixth Circuit's opinion on March 14, 2014, in this case. In *Rosemond*, the Supreme Court stated that, for liability under an aiding-and-abetting theory, the government must prove that a defendant "(1) t[ook] an affirmative act in furtherance of [the underlying] offense, (2) with the intent of facilitating the offense's commission." *Id*. at 71. The Court then applied that standard to a § 924(c) offense, holding that the first element of aiding-and-abetting liability

is satisfied if the defendant "facilitat[ed] either the drug transaction or the firearm use (or of course both)." *Id*. at 74. "It is inconsequential . . . that his acts did not advance each element of the offense; all that matters is that they facilitated one component." *Id*. At 74-75. To satisfy the second element of a § 924(c) offense, however, the government must prove that a defendant intended both the drug trafficking and the firearms possession, i.e., that the defendant "decided to join in the criminal venture . . . with full awareness of its scope—that the plan calls not just for a drug sale, but for an armed one." *Id*. at 77-78. To form such intent, a defendant must have "advance knowledge" that "one of his confederates will carry a gun." *Id*.

*Rosemond* provides no relief for Petitioner. First, the Court previously rejected Petitioner's attempts to challenge a jury instruction involving aiding and abetting kidnapping and firearms offenses [Doc. 175]. Second, as this Court previously held in addressing post-trial motions, the testimony of multiple witnesses, including the kidnapping victim himself, established firearms were used during and in relation to the kidnapping. Smith also described the Defendants' drawing of firearms when Jordan was first put in the car by the Defendants. As noted in its post-trial rulings, this Court found the government presented sufficient evidence upon which a rational juror could find beyond a reasonable doubt that Defendants used and carried firearms during and in relation to the kidnapping of Jordan [Doc. 104 at Page ID # 567-68].

Moreover, a hearing is not required in this case as Petitioner's factual allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal quotation marks omitted) (citation omitted). Petitioner's bald assertions and conclusory allegations do not provide sufficient grounds to require an evidentiary hearing.

*Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017) (citation omitted). Here, upon review of the motions, memoranda, responses, replies and other voluminous filings of record, the Court finds that an evidentiary hearing is not required, because the record conclusively shows that Petitioner is not entitled to § 2255 relief as a matter of law. *See Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983) (stating that evidentiary hearing on motion to vacate sentence is not required to resolve purely legal issues).

## VI.     CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c)(1), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of Petitioner's claims. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA **SHALL NOT ISSUE**.

## VII.    CONCLUSION

For the reasons stated herein, the Court finds that neither an evidentiary hearing nor discovery is necessary and Petitioner's 2255 Motion [Doc. 141], including the claims purportedly set forth in his motion to amend [Doc. 155] and supplements [Docs 159, 160] are **DENIED** and **DISMISSED WITH PREJUDICE**. Petitioner's motions for discovery of grand jury and other materials allegedly pertinent to his 2255 Motion [Docs. 174, 191] are also

**DENIED.** Petitioner's motion to withdraw the motion for sanctions [Doc. 190] is **GRANTED**, and the motion for sanctions [Doc. 186] is **TERMINATED AS MOOT.**

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**